UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          : Cr. No. 00-204

        V.                        : Judge Lamberth

JAIRO MOTTA VARGAS                : Trial 10/22/07

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO EXCLUDE PHYSICAL EVIDENCE

Introduction

         As part of the discovery in this case, the United States
provided the defense with copies of photographs depicting the
damage to the Government issued Ford Explorer that was being
driven by Drug Enforcement Administration (DEA) Special Agent
Darryl Paskett at the time defendant Jairo Motta Vargas tried to
murder him. The defense has moved to exclude the introduction of
these photographs, claiming that its due process rights were
violated because the DEA subsequently repaired the damage caused
by the bullets and repainted the vehicle.

        As set forth herein, the defendant's claim must be denied.
First, the damaged vehicle is not completely "unavailable" for
examination because it remains in the custody of the DEA in
Ecuador and could be examined by the defense. Moreover, the
defense cannot meet its burden of establishing either that the
allegedly missing evidence has some exculpatory value or that the
Government acted with "bad faith" by failing to maintain the
Explorer for the last eight years in its damaged state. See e.g.,

1

United States v. McKie, 951 F.2d 399, 423 (D.C. Cir. 1991)
(defense bears burden of "proving that the government failed in
bad faith to preserve material and potentially exculpatory
evidence").

### Background

The Government's evidence in this case will establish that
on July 12, 1999, defendant Jairo Motta Vargas tried to kill DEA
Special Agent Darryl Paskett on the streets of Quito, Ecuador.
The defendant and his confederates initially attempted to lure
Paskett out of his vehicle - a burgundy colored Ford Explorer -
so that they could kidnap him. When Special Agent Paskett
attempted to leave the scene, defendant Motta Vargas stepped in
front of the moving car and fired several rounds from a .9mm
Baretta handgun at Paskett. The rounds struck the vehicle's front
passenger side fender, the front passenger door, and blew out a
portion of the Explorer's rear window.

After the murder attempt, Special Agent Paskett notified his
superiors of the situation and drove to the U.S. Embassy. A short
time later, members of the Ecudoran National Police arrived and
processed the crime scene, which included taking photographs of
the damage inflicted on the Explorer by the expended rounds.

For example, one photograph (attached hereto as Exhibit A)
shows the damage to the Explorer's rear window; a second
photograph (attached hereto as Exhibit B) depicts a bullet hole

2

on the front passenger side fender; and a third photograph
(attached hereto as Exhibit C) memorializes the bullet hole in
the front passenger side door.

Copies of these photographs (and others) were provided to
the defense as part of the discovery produced in this case. The
Government also advised the defense that since the time of the
shooting in 1999, the vehicle had been repaired. In that regard,
the Government has learned that the DEA contacted a local
automobile repair company in Ecuador, which replaced the rear
window on the car, "patched" the bullet holes to the exterior,
and then painted the car a new color. The Government advised the
defense that the Ford Explorer was still being used by the DEA in
Quito.

The undersigned prosecutor has personally spoken with DEA
Special Agent Salvador Rodriguez, who was in charge of the Quito
office at the time that the Explorer was repaired. Special Agent
Rodriguez has advised that it is customary for the DEA to repair
vehicles that have been involved in shooting incidents and return
them to service once an investigation is completed. Moreover,
Special Agent Rodriguez indicated that it is very expensive and
time consuming get appropriate vehicles transported to South
America and that the Explorer in this case was needed by the DEA
to effect its mission in Ecuador. Indeed, the Government has
confirmed with DEA Special Agent Bruce Goldberg, the current head

of the DEA's Ecuador offices, that the Explorer is in service.

Analysis

The Supreme Court has considered the obligation that the due process places on the Government to preserve evidence in a criminal case. Thus, in California v. Trombetta, 467 U.S. 479, 488 (1984), the Court found that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." The Court held that in order to meet this standard of constitutional "materiality," the evidence must possess an exculpatory value that was "apparent before the evidence was destroyed" and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Id.

The principles set forth in Trombetta were further explored in Arizona v. Youngblood, 488 U.S. 51 (1988). In Youngblood, the defendant was convicted of child sex offenses, but the Arizona Court of Appeals reversed, concluding that the state had violated Youngblood's due-process rights by failing to preserve semen samples for testing. Id. at 54. The Supreme Court reinstated the conviction, ruling that "unless a criminal defendant can show **bad faith** on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58 (emphasis added). The Court concluded that the

4

defendant had "not shown that the police knew the semen samples would have exculpated him when they failed to [preserve them] . . . ; this evidence was simply an avenue of investigation that might have led in any number of directions." Id.

In this case, the defense asserts that the repairs to the Explorer precludes it from examining "what the government claims are bullet holes, test them for gunpowder residue, and analyze them for the angles of entry and the degree of force of the bullets" (Def. Motion at p. 2, lines 14-15). As an initial matter, it is not entirely clear that the defense is precluded from conducting any tests on the vehicle. The car remains in the DEA's custody and the Government would make the car available if the defense wanted to examine it. It could be that the material used to fill the bullet holes could be removed and the vehicle examined to determine the angle of entry and/or the degree of force of the bullets. At a minimum, it would seem prudent for the defense to investigate this possibility before asserting that the car is unavailable. [1]

---

[1] The defense claim that it was deprived the defense of the opportunity to "gunshot residue" would depend upon the distance between the defendant and the vehicle at the time he began firing. According to at least one website, "[g]unshot residues emitted from the muzzle will travel out to distances of approximately 3 and 5 feet in most firearms but in some cases can travel even greater distances. At the 3-5 foot range the gunshot residues may only consist of a few trace particles and make determining the firing distance difficult if not impossible." See www.firearmsid.com/A_distanceGSR.htm.

Moreover, the defense has failed to even suggest how the allegedly unavailable evidence might be exculpatory. For example, the defense asserts that they cannot independently determine the "angle of entry" of the bullet holes without an analysis of how that might exonerate Motta Vargas. Given the fact that both the vehicle and the defendant were both in motion at the time of the shooting it is hard to see how the angle of attack would be a defense to any element of the charge in this case. Similarly, even assuming that the "degree of force" of the bullets can be quantified, it would hardly seem to exculpate the defendant whether there was a great deal, or only a minimal amount of force associated with the bullets. Likewise, the existence or non-existence of gunpowder residue might shed light - at least in some general way - as to how far defendant Motta Vargas was when he began firing at Special Agent Paskett's vehicle. Whether he was five feet away or ten feet, or twenty feet away, however, does not appear to exculpate the defendant from the charge of attempted murder.

Finally, the defense cannot establish that the Government acted with any bad faith in this case. The Government proffers to the Court - and is prepared to bring witnesses from the DEA to testify if necessary - that the repairs to the Ford Explorer were made as part of the agency's policy with respect to utilization of automobiles. The agents have also told the undersigned

prosecutor that the repairs were in no way intended to thwart the defense from examining the car. The vehicle was repaired in 1999 and at that time, there would have been no way for anyone to have known that the defendant would ultimately be extradited to the United States to stand trial some eight years into the future.

Conclusion

For all of the foregoing reasons, the Government respectfully requests that the defense motion to exclude the photographs of the damage to Special Agent Paskett's vehicle be denied.

Respectfully submitted

KENNETH BLANCO, Chief
Narcotics and Dangerous Drug Section


/s/ *Robert Feitel*


Robert Feitel DC BAR 366673
Carmen Colon
Trial Attorney
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 307-3586

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government' Opposition was filed electronically on July 18, 2007 to Shawn Moore, Esq. and Rita Bosworth, Esq. of the Federal Public Defender Service, 625 Indiana Avenue, N.W., Washington, D.C.


/s/ *Robert Feitel*

_____

Robert Feitel